UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIM A. HAZEL,    )          | |
| )          | |
| Plaintiff,    )          | |
| )          | |
| v.    )          | Civil Action No. 02-1375 (RWR) |
| )          | |
| WASHINGTON METROPOLITAN    )          | |
| AREA TRANSIT AUTHORITY,    )          | |
| )          | |
| Defendant.    )          | |
| )          | |

MEMORANDUM OPINION AND ORDER

Plaintiff Kim Hazel brings this action against her former employer, Washington Metropolitan Area Transit Authority ("WMATA"), alleging sex-based and race-based hostile work environment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983, breach of a settlement agreement, and tortious interference with a prospective business advantage. WMATA has moved to dismiss all but Hazel's breach of settlement claim. Because Hazel's claims of sex and race discrimination and retaliation under Title VII were administratively exhausted and timely filed and are not foreclosed by the settlement agreement WMATA allegedly breached, WMATA's motion with respect to those claims will be denied. Because Hazel does not contest WMATA's asserted immunity from suit for § 1981, § 1983 and tortious interference with a prospective business advantage claims,

- 2 -

WMATA's motion to dismiss with respect to those claims will be
granted as conceded.

BACKGROUND

I.  FACTUAL BACKGROUND

Hazel makes the following allegations in her amended
complaint.  She began working for WMATA in January of 1999 as a
manager in WMATA's Department of Transit System Development.
Throughout 1999, her second-level supervisor and the assistant
general manager for the department, Takis Salpeas, made sexually
suggestive comments to her and subjected her to unwanted sexual
advances.  Salpeas also made racially derogatory statements and
encouraged Hazel to discriminate against other minority
employees.

Salpeas's sexual harassment continued through October of
1999, when she forcefully rejected his advances.  Following this
rejection, and after Hazel voiced support for another female
employee who had filed an internal complaint alleging sexual
harassment by Salpeas, Salpeas began retaliating against Hazel.
He treated her in a hostile manner and criticized her work
without justification in front of other WMATA officials.  Salpeas
later bypassed her for a promotion after unjustifiably
discouraging her from applying for the position.  Finally, in
August of 2000, Hazel learned that Salpeas and another manager
were planning to replace her, which prompted Hazel to file a

- 3 -

charge with WMATA and later with the Equal Employment Opportunity
Commission ("EEOC") alleging sexual harassment and discrimination
("2000 charge").

In March of 2001, Hazel engaged in private mediation with
Salpeas and other WMATA officials, and on April 25, 2001, they
all executed a written settlement agreement to resolve the claims
in the 2000 charge.  Under the terms of the settlement agreement,
WMATA agreed to pay Hazel $120,000 and retain Hazel through
September 1, 2001, and Hazel agreed to withdraw her 2000 charge.
In addition, the agreement contained a confidentiality provision,
which stated:

> The terms of this settlement, as well as all facts and
> events leading up to the filing of a charge by
> Ms. Hazel shall be strictly confidential. . . .  All
> parties and their counsel agree that no information
> regarding the amount paid in settlement or the facts
> giving rise to this settlement will be disclosed to any
> media entity, including but not limited to television,
> radio, cable, legal publications or other print
> publications . . . .

(Am. Compl. ¶ 27.)  By letter dated May 1, 2001, Hazel notified
the EEOC that she was withdrawing the 2000 charge because she
settled the matter with her employer.  (See Def.'s Mot. to
Dismiss Compl., Ex. 2, Letter from Kim Hazel to EEOC (May 1,
2001).)

On July 3, 2001, a prominent article appeared in the
Washington Times describing in detail Hazel's allegations against
Salpeas and the terms of the settlement agreement between Hazel,

- 4 -

WMATA and Salpeas.  The article cited "sources close to [WMATA's]
board and top officials" and quoted "one high-ranking official"
at WMATA as stating that Salpeas denied the facts of the
complaint, saying they were "all lies."  (Am. Compl. ¶ 30.)  The
article also stated that "Miss Hazel did not return a call
seeking comment."  (Id. ¶ 31.)  Hazel had interviewed for a job
with a transit employer in the Washington, D.C. area on July 1,
2001 and believed the interview had gone well.  However, after
the article's publication, a representative from the prospective
employer indicated that he had read the article and would need to
consult with his general counsel before determining whether the
company was still interested in hiring Hazel.  The prospective
employer did not contact Hazel again.  The settlement unraveled.

II.  PROCEDURAL HISTORY

    The parties' filings reveal that the following procedural
history is undisputed.  The 2000 charge alleged not only sexual
harassment and discrimination, but also unlawful retaliation, and
racial harassment and discrimination.  (See Def.'s Mot. [#5] to
Dismiss, Ex. 1, Charge of Discrim. and Hazel Decl. at 1.)  It
recounted allegations of Salpeas's unwanted sexual comments and
advances; his bigoted comments and behavior; and his retaliation
against her for rejecting his advances and for her support of the
other harassment complainant by his treating her hostilely, not
promoting her, and planning her termination.  It described the

- 5 -

harassment as "pervasive and severe intimidation, ridicule and insult, [that has] fundamentally altered the conditions of [her] employment." (Id., Hazel Decl. at 23.)

Hazel asked the EEOC on May 1, 2001 to allow her to withdraw her 2000 charge in accordance with the settlement agreement.  The EEOC initially declined to allow Hazel to withdraw the 2000 charge because neither Hazel nor WMATA would provide the terms of agreement.[1]  However, WMATA alerted the EEOC to the Washington Times article, and the EEOC then learned of the details of the agreement from that article.  The EEOC thereafter sent Hazel a letter on July 31, 2001 approving the withdrawal of her 2000 charge and notifying her that it would terminate further proceedings with regard to that charge.

One month later, Hazel filed a second charge with the EEOC ("2001 charge") indicating on the face of the EEOC discrimination charge form that the complaint concerned unlawful ongoing retaliation.  In her narrative accompanying the charge form, Hazel explained that soon after she joined WMATA, Salpeas began sexually harassing her by making sexually suggestive comments and unwanted sexual advances.  In addition, she alleged that Salpeas

---

[1] 29 C.F.R. § 1601.10 provides: "A charge filed by or on behalf of a person claiming to be aggrieved may be withdrawn only by the person claiming to be aggrieved and only with the consent of the Commission."  The regulation further provides that the Commission may grant consent to a request to withdraw a charge only "where the withdrawal of the charge will not defeat the purposes of title VII or the ADA."  Id.

made numerous sexist and racist comments to her, encouraged her
to discriminate against other women and minorities, and began
undermining her authority and attempted to set her up for
termination after she refused to enter into a sexual relationship
with him.  Finally, Hazel recounted her 2000 charge of
discrimination and the settlement reached by the parties, and
accused Salpeas and WMATA of retaliating against her by making
public the terms of the settlement, ostracizing her at WMATA
after news of the settlement became public, and undermining her
search for employment.  On September 11, 2001 Hazel sent a letter
to the EEOC, inquiring about the status of her 2001 charge and
requesting that the Commission reinstate her 2000 charge.

The EEOC denied Hazel's request to reinstate her 2000 charge
in a letter dated September 20, 2001, informing her that because
the EEOC was not a third party to the settlement agreement, it
was not responsible for the terms of the agreement, and was "not
in a position to further assist" her.  The letter did not inform
Hazel of any right to bring a civil action on the claims of her
2000 charge or any deadline by which to file an action.

In April of 2002, the EEOC dismissed Hazel's 2001 charge as
well, this time informing Hazel that she had a right to bring
suit in federal court against WMATA related to that charge within
ninety days of receiving notice of the EEOC's dismissal.  Hazel
brought this action ninety days later on July 10, 2002, alleging

- 7 -

sex and race discrimination in the form of a hostile work environment and retaliation in violation of Title VII and §§ 1981 and 1983, breach of the settlement agreement, and tortious interference with a prospective business advantage.[2]  Hazel subsequently amended her complaint, alleging two additional incidents of retaliatory non-selection -- one in August of 2003 and another in October 2003 -- and retaliatory termination in November of 2003.

WMATA now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) all but the breach of settlement claim.  Specifically, WMATA contends that this court lacks subject matter jurisdiction over Hazel's tort claim and discrimination claims under §§ 1981 and 1983 because WMATA is immune from suit for those claims.  WMATA also argues that Hazel's sex and race discrimination claims should be dismissed for want of subject matter jurisdiction because Hazel withdrew her administrative complaint and did not timely file suit after receiving notice that the EEOC had terminated its administrative process.  In addition, WMATA contends that the additional claims of retaliatory non-selection and termination must be dismissed for failure to state a claim because they were untimely filed.  Finally, WMATA maintains that the settlement agreement precludes

_____

[2] Hazel also stated a claim for defamation in her amended complaint, but then withdrew that claim in her opposition to WMATA's motion to dismiss.  (See Pl.'s Opp'n at 4 n.2.)

- 8 -

Hazel from bringing the discrimination, retaliation and tort claims.  Hazel generally opposes the motion, arguing that she timely filed her complaint and exhausted her administrative remedies for her sex and race discrimination claims under Title VII, and that the settlement agreement does not preclude her from filing her claims because she repudiated the agreement.  However, Hazel explicitly concedes that WMATA enjoys sovereign immunity from claims arising under §§ 1981 and 1983, and Hazel does not present any argument that WMATA waived its sovereign immunity with respect to her tort claim.

## DISCUSSION

Motions to dismiss for lack of subject matter jurisdiction are cognizable under Federal Rule of Civil Procedure 12(b)(1).  However, motions to dismiss for failure to exhaust administrative remedies are more appropriately analyzed under Rule 12(b)(6).  See Arbaugh v. Y & H Corp., 126 S. Ct. 1235, 1245 (2006) ("[W]hen Congress does not rank a statutory limitation on [the statute's] coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character."); EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997) (stating that "[n]othing in Title VII . . . expressly limits the district court's subject matter jurisdiction"); Beins v. United States, 695 F.2d 591, 599 (D.C. Cir. 1982) (noting that "exhaustion requirements are not jurisdictional in nature but rather are

- 9 -

statutory conditions precedent to the instigation of litigation"); Nichols v. Truscott, 424 F. Supp. 2d 124, 133 (D.D.C. 2006) (holding that the "[t]he exhaustion of administrative remedies is not a jurisdictional requirement of [Title VII]").  In briefing the exhaustion issue, both parties rely on materials outside the amended complaint, so WMATA's request for dismissal on this issue will be treated as one for summary judgment.  See Fed. R. Civ. P. 12(b).

In considering a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), a court must accept all the allegations in a plaintiff's complaint as true and construe them in the light most favorable to the plaintiff.  See Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003).  "Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiff's favor, the court finds that the plaintiff has failed to allege all the material elements of his cause of action."  Weyrich v. The New Republic, Inc., 235 F.3d 617, 623 (D.C. Cir. 2001) (internal citations omitted).  Stated differently, a dismissal for failure to state a claim upon which relief may be granted is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Summary judgment will be granted only if the evidence, viewed in the light most favorable to the nonmoving party, indicates that no issue of material fact exists and the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Taylor v. Rice, 451 F.3d 898, 904 (D.C. Cir. 2006).

I.   §§ 1981 AND 1983 CLAIMS AND TORT CLAIM

"WMATA, a mass transit system for the District of Columbia and surrounding suburban areas, was created by an interstate compact among Maryland, Virginia, and the District of Columbia, and enjoys the Eleventh Amendment immunity of the two signatory states."  Barbour v. WMATA, 374 F.3d 1161, 1163 (D.C. Cir. 2004) (citing Morris v. WMATA, 781 F.2d 218, 219-20 (D.C. Cir. 1986)). WMATA "enjoys, to the same extent as each state, immunity from suit in federal court based on its performance of governmental functions . . . [which] encompasses 'the hiring, training, and supervision of WMATA personnel[.]'"  Jones v. WMATA, 205 F.3d 428, 432 (D.C. Cir. 2000).  "There are two important exceptions to Eleventh Amendment immunity.  First, a state may waive its immunity and consent to suit.  Second, Congress may exercise its enforcement power under § 5 of the Fourteenth Amendment to abrogate a state's immunity without its consent."  Barbour, 374 F.3d at 1163.  The plaintiff bears the burden of proving that sovereign immunity has been waived.  Cf. Erby v. United States,

424 F. Supp. 2d 180, 183 (D.D.C. 2006) ("A party bringing suit against the United States therefore bears the burden of proving that the government has unequivocally waived its immunity.") (citing Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003)).

WMATA argues that it enjoys sovereign immunity from Hazel's race discrimination claims under §§ 1981 and 1983 and from her tortious interference claim.  (See Def.'s Mot. to Dismiss Am. Compl. at 19-22.)  Hazel concedes that her §§ 1981 and 1983 claims are precluded under the law of this circuit.  She argues that this immunity is unwarranted merely to preserve the argument for appeal.  (See Pl.'s Opp'n at 20-22.)  Further, Hazel does not contest WMATA's argument that its broad sovereign immunity precludes her tortious interference with a prospective business advantage claim.  Accordingly, these claims will be dismissed for lack of subject matter jurisdiction over them given WMATA's sovereign immunity.

II.  TITLE VII SEX AND RACE DISCRIMINATION CLAIMS

"Title VII requires that a [non-federal employee] complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge.  Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action

herself." Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir.
1995); see also 42 U.S.C. § 2000e-5(f)(1).  Such a lawsuit must
be brought within ninety days of an EEOC dismissal or notice that
it will not bring its own civil action,[3] and that lawsuit is
"limited in scope to claims that are like or reasonably related
to the allegations of the charge and growing out of such
allegations." Park, 71 F.3d at 907 (internal quotation marks
omitted); see also Lane v. Hilbert, No. 03-5309, 2004 WL 1071330,
*1 (D.C. Cir. May 12, 2004) (noting the breadth of a civil suit
is "only as broad as [the] scope of any investigation that
reasonably could have been expected to result from [the] initial
charge of discrimination"); Cross v. Small, Civil Action No.
04-1253 (RMC), 2006 WL 2819758, at *14-15 (D.D.C. Sept. 29,
2006).  These administrative requirements serve the function of
giving the accused party notice of the charges and narrowing the
issues for litigation.  See Park, 71 F.3d at 907.  A notice to an
employee that no further action will be taken is insufficient to
start the running of the time period within which the employee
must file a lawsuit, though, if the notice does not explicitly
inform the employee that the period has begun.  See Coles v.

---

[3] The EEOC typically notifies a party that in the absence of
agency action, the party has the right to bring suit in district
court.  See 29 C.F.R. § 1601.28; see also 42 U.S.C. § 2000e-
5(f)(1); Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091, 1093
n.3 (4th Cir. 1982).

- 13 -

Penny, 531 F.2d 609, 610, 617 (D.C. Cir. 1976); Williams v. Hidalgo, 663 F.2d 183, 187-88 (D.C. Cir. 1980).

The requirement that a lawsuit be filed timely is "'subject to waiver, estoppel, and equitable tolling.'" Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 439 (1990) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). However, equitable tolling is a judicial power that should "be exercised only in extraordinary and carefully circumscribed instances." Smith-Haynie v. District of Columbia, 155 F.3d 575, 579-80 (D.C. Cir. 1998) (quoting Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988)).

WMATA argues that Hazel failed to exhaust her administrative remedies because she withdrew her 2000 charge in light of the settlement with WMATA and Salpeas, and never refiled the allegations in that charge. WMATA further contends that even if Hazel is found to have exhausted her administrative remedies, she still did not timely file this lawsuit within ninety days of learning the EEOC would take no further action. (See Def.'s Mot. to Dismiss Am. Compl. at 8-15.) Hazel counters that she exhausted her administrative remedies by attempting to reinstate her 2000 charge with the EEOC, and that she timely filed this action because she filed it within ninety days of the only right-to-sue letter the EEOC provided her.

- 14 -

Hazel exhausted her administrative remedies with respect to her 2000 charge, alleging Title VII race and sex discrimination claims.  In response to Hazel's request to reinstate her 2000 charge, the EEOC sent Hazel a letter stating that it was not a party to her settlement agreement and that it was no longer able to assist her.  Because the EEOC said it would take no further action on her behalf, Hazel was neither able nor required to do anything more to exhaust her administrative remedies.  See Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091, 1094 n.7 (4th Cir. 1982) (holding that plaintiff had exhausted her administrative remedies and could file suit after learning the EEOC would take no further action on her behalf).  Further, the EEOC's letter mentioned neither any right to file suit nor any deadline within which to file it.  When Hazel did receive a right-to-sue letter from the EEOC, though, she brought this action within ninety days.  In light of Hazel's prompt effort to revive her 2000 claims and the EEOC's initial failure to notify Hazel of her right to sue, Hazel acted diligently to preserve her rights and the deadline to file suit for sex and race discrimination charges should be deemed tolled until July 10, 2002.

In any event, WMATA concedes that Hazel could have exhausted her administrative remedies with respect to her sex and race discrimination claims by filing a new administrative charge after the alleged breach.  (See Def.'s Mot. to Dismiss Am. Compl. at 9

- 15 -

("Plaintiff was required to file a new charge re-raising those claims in light of the alleged breach.").)  Hazel did just that. Hazel's 2001 charge narrative incorporated the core of the underlying factual allegations of her 2000 sex and race discrimination claims.  The 2000 sex and race discrimination claims are more than reasonably related to her 2001 charge, and they were exhausted by the 2001 charge.  See Park, 71 F.3d at 907-09; Lane, 2004 WL 1071330, at *1.  WMATA does not dispute that this lawsuit was timely filed after the 2001 charge was exhausted.  Thus, Hazel's race and sex discrimination claims in this action have been timely filed.

III. NEW CLAIM OF RETALIATION

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice[,]'" and starts running a new clock for filing charges based upon the alleged unlawful practice.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002). "Morgan does not address whether a previously filed EEOC complaint must be amended to encompass subsequent discrete acts in order to render such acts susceptible to judicial review." Rivera v. PR Aqueduct & Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003).  In particular, Morgan does not address whether a

- 16 -

previously filed EEOC complaint of retaliation must be amended to add subsequent acts of retaliation that are alleged to be just like the retaliation alleged in the EEOC charge and are an ongoing continuation of them.

Historically, a lawsuit based on an EEOC charge generally could include "claims that [were] like or reasonably related to the allegations of the charge and growing out of such allegations." Park, 71 F.3d at 907 (internal quotation marks omitted); see Lane, 2004 WL 1071330, at *1; Cross, 2006 WL 2819758, at *14-15. However, two reported cases in this district have held that after Morgan, a plaintiff must generally exhaust his administrative remedies with respect to each subsequent, discrete act of retaliation. See Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 148-50 (D.D.C. 2005) (recognizing that "[m]ost courts before Morgan had 'determined that a plaintiff is not required to exhaust . . . administrative remedies with respect to claims of retaliation that occurred after the filing of an administrative complaint" but holding that after Morgan a plaintiff must generally exhaust his administrative remedies with respect to
each discrete act of retaliation); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) ("Individual acts of retaliation that form the basis of retaliation claims are also included within the Supreme Court's list of discrete

- 17 -

discriminatory acts [in Morgan] and therefore any claim stemming from those acts must be administratively exhausted."). Though the D.C. Circuit has not weighed in expressly on the precise reach of Morgan, the Eighth Circuit has held that, in keeping with the theory that reasonably related subsequent acts may be considered exhausted, "where the subsequent retaliatory acts [are] of a like kind to the retaliatory acts alleged in the EEOC charge, [and are] specified to be of an ongoing and continuing nature[,]" separate administrative exhaustion is not required. Wedow v. City of Kansas City, Mo., 442 F.3d 661, 674 (8th Cir. 2006); cf. Coleman-Adebayo, 326 F. Supp. 2d at 138 n.3 (discussing a hypothetical situation involving ongoing acts of discrete retaliatory conduct occurring subsequent to the filing of an administrative charge and suggesting that Morgan may not require separate exhaustion for the subsequent acts).

In Wedow, two female firefighters filed charges with the EEOC in 1997 alleging ongoing sex discrimination based largely on Kansas City's failure to provide adequately fitting protective clothing or adequate facilities. Id. at 667. Each charge also alleged ongoing and continuing retaliatory denial of career-enhancing opportunities. Id. at 674 (noting that the 1997 charges alleged plaintiffs were continuously denied opportunities to work out-of-class and in tactical shift designation assignments). The lawsuit that followed the 1997 charges alleged

- 18 -

discriminatory treatment and retaliation through 2000, including
denial of career-enhancing opportunities, in violation of Title
VII.  Id. at 667-68.  The plaintiffs proceeded to trial
separately, and each plaintiff prevailed.  Id. at 667.  Kansas
City appealed the jury verdict arguing that it was entitled to
judgment as a matter of law on the post-1997 retaliation claims
that were not asserted in the 1997 EEOC charges because the
plaintiffs did not administratively exhaust those claims.  Id. at
672.  The Eighth Circuit upheld the jury verdict on the post-1997
retaliation claims, reasoning that those claims were not
precluded because they were like or related to the underlying
EEOC charges that alleged ongoing and continuing retaliation.
Id. at 672-75.  The Eighth Circuit explained that

> [A] reasonable EEOC investigation of alleged 'ongoing
> and continu[ing]' retaliation in this case would
> certainly have focused on whether or not the
> retaliation alleged was in fact existent at the time of
> the filing of the charges and if it did indeed continue
> to exist at the time of the investigation.  Unlike
> allegations of a discrete act of discrimination that
> occurred in the past and outside of the limitations
> period or that occurred subsequently but were unrelated
> to the scope of the EEOC charges, the allegations in
> the November 1997 EEOC charges filed in this case spoke
> of acts occurring in the present and specifically
> alleged future implications as well.

Id. at 674.

Significantly, the Eight Circuit grappled with the
implications of Morgan's "clear rejection of the continuing
violations theory as a means to toll the limitations period for

discrete acts of discrimination that occurred prior to the
limitation period for a timely charge." Id. at 673.  The court
explained that in light of Morgan, it "has narrowed its view of
what subsequent acts are sufficiently related to be within the
scope of the properly filed administrative charge, [but] we have
not wholly abandoned the theory that reasonably related
subsequent acts may be considered exhausted." Id.  The court
noted that under its post-Morgan precedents, lawsuits alleging
acts post-dating the administrative charges need not "'mirror the
administrative charges' as long as 'the sweep of any subsequent
judicial complaint' is no broader than 'the scope of the EEOC
investigation which could reasonably be expected to grow out of
the charge' filed in the EEOC complaint." Id. at 674 (quoting
Duncan v. Delta Consol. Indus., 371 F.3d 1020, 1025 (8th Cir.
2004)).

Here, the retaliatory acts occurring after the filing of
Hazel's judicial complaint fit the narrow category of claims,
described in Wedow, that should survive the holding of Morgan.
Hazel's 2000 and 2001 charges taken together expressly allege
ongoing retaliation and describe a history of sexual and racial
harassment and discrimination, including a retaliatory non-
selection and attempts to set her up for termination.  Hazel's
amended complaint adds to these allegations two subsequent
retaliatory non-selections and a termination.  Like the

retaliation in <u>Wedow</u>, Hazel's additional allegations concern ongoing retaliatory activity of a kind similar to that alleged in her initial charge.  Moreover, as did the Eighth Circuit, the D.C. Circuit post-<u>Morgan</u> has said the scope of the claims in a lawsuit brought after the filing of an EEOC charge may be "as broad as [the] scope of any investigation that reasonably could have been expected to result from [the] initial charge of discrimination" although no broader.  <u>Lane</u>, 2004 WL 1071330, at *1.  It would be no surprise if the D.C. Circuit adopted the analysis of <u>Wedow</u>.  Accordingly, no exhaustion separate and apart from Hazel's initial charge is required and her additional claim of retaliation is appropriate for adjudication.

IV.  PRECLUSIVE EFFECT OF THE SETTLEMENT AGREEMENT

A settlement agreement is a contract and its enforcement is governed by the established principles of contract law.  <u>Village of Kaktovik v. Watt</u>, 689 F.2d 222, 230 (D.C. Cir. 1982).  When one party breaches a settlement agreement, the non-breaching party may choose either to enforce the agreement or to rescind it and sue on the original claims.  <u>See</u> <u>id.</u> at 231; <u>Arnold v. United States</u>, 816 F.2d 1306, 1309 (9th Cir. 1987); <u>Perdue</u>, 690 F.2d at 1093 (holding that a plaintiff who entered into a settlement agreement could bring suit on his underlying discrimination claims when the employer breached the agreement).

- 21 -

WMATA argues that all but Hazel's breach of settlement claims are precluded by the parties' settlement agreement, which releases WMATA from liability for Hazel's discrimination and retaliation claims in exchange for monetary compensation.  (See Def.'s Mot. to Dismiss Am. Compl. at 27-30.)  Hazel counters that her claims are not barred by the settlement agreement because WMATA breached that agreement, giving her the right either to enforce the agreement or to rescind it and sue on her original claims.  (See Pl.'s Opp'n at 5-8.)

Here, Hazel has chosen to rescind the agreement and sue on her original claims of sex and race discrimination and on her claim of retaliation.  Hazel is wholly within her rights in doing so if her allegations are true.  See Watt, 689 F.2d at 230. Indeed, she may be pursuing her only viable option.  Demanding performance of the settlement agreement in total is impossible in light of WMATA's alleged breach of the confidentiality clause, a breach that cannot be undone.  Hazel's sex and race discrimination claims and her retaliation claim are not barred by the settlement agreement.

## CONCLUSION

Because Hazel's claims of sex and race discrimination and retaliation under Title VII were administratively exhausted and timely filed and are not foreclosed by the settlement agreement WMATA allegedly breached, WMATA's motion to dismiss those

- 22 -

claims, deemed a motion for summary judgment with regard to

WMATA's exhaustion argument, will be denied.  Because Hazel

does not contest WMATA's asserted immunity from suit for

§§ 1981 and 1983 and tortious interference with a prospective

business advantage claims, WMATA's motion to dismiss those

claims for lack of subject matter jurisdiction will be granted

as conceded.  Accordingly, it is hereby

ORDERED that WMATA's motion [29] to dismiss be, and hereby

is, GRANTED in part and DENIED in part.  The motion is granted

with respect to Hazel's § 1981, § 1983 and tortious

interference with a prospective business advantage claims.  The

motion is denied with respect to Hazel's Title VII claims of

sex and race discrimination and retaliation.

SIGNED this 30th day of November, 2006.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge